Lori L. **GUBITOSI**, Plaintiff,

v.

John A. **KAPICA**, individually and in his capacity as Chief of Police of the Town of Greenburgh, New York, The Town Board, of the Town of Greenburgh, New York, The Board of Police Commissioners of the Town of Greenburgh, New York, and the Town of Greenburgh, New York, Defendants.

No. 94 Civ. 8927 (BDP).

United States District Court, S.D. New York.

Aug. 10, 1995.

Lovett & Gould, White Plains, NY, for plaintiff.

Siff Rosen, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

PARKER, District Judge.

The plaintiff, Lori A. Gubitosi ("Gubitosi"), instituted this action pursuant to 42 U.S.C. § 1983 against John A. Kapica ("Kapica), the Chief of Police of the Town of Greenburgh ("the Town") and the Town's Board of Police Commissioners ("the Board"), the Town Board and the Town itself (collectively referred to as "defendants"), on the ground that she was suspended without pay from her job as a police officer in violation of her constitutional rights to free speech and due process. In her complaint, Gubitosi seeks compensatory damages, punitive damages, reinstatement, back pay, and seniority rights.

Now before the court is defendants' motion, pursuant to Fed.R.Civ.P. 12(b)(6) and 56, to stay or dismiss based on the abstention doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

## II. PLAINTIFF'S ALLEGATIONS

Gubitosi has been employed as a police officer for ten years by the Town's police department. She is openly a lesbian. Concerned about the implications of a strip search performed on a woman by a known lesbian, and by, what she terms, a department policy which directs strip searches[1] only for female and/or predominantly African–American criminal suspects, plaintiff on May 31, 1994, according to the allegations of her complaint, refused to obey her superior officer's orders which required that she per-

---

1. Rule 20.2.3 of the Rules and Regulations of the Greenburgh Police Department provides:

   Whenever a female is arrested, the desk officer will assign a matron or a female police officer to search the prisoner and stand by until the prisoner is released on bail or transferred to the Department of Corrections. If no matron or female officer is on duty or available, one may be recalled on overtime as needed.

   Rule 22.3.4 provides in pertinent part:

   All prisoners will be thoroughly searched before entry into the cell block ...

form a strip search of a female prisoner.[2] As a result of her refusal, on June 15, 1994, she was suspended without pay for five days. Shortly after her suspension, Gubitosi underwent a performance review in which she denounced many police practices. Specifically, she criticized the following alleged practices: (1) police officers who were supposed to patrol the Town, instead, attended Sunday morning bagel breakfasts—at the taxpayers' expense; (2) police officers were permitted to take extended breaks at various local firehouses; (3) the department failed to investigate properly burglaries involving property belonging to plaintiff's family; (4) police officers were permitted to drink to excess, to use obscene language and otherwise misbehave; (5) inebriated police officers were allowed to continue operating their motor vehicles even after they had been stopped for speeding.

On July 22, 1994, Gubitosi was ordered to strip search three female narcotics suspects. Gubitosi reported to her superior that she had performed the search. Shortly thereafter, another female police officer searched the three detainees and found money, i.e. contraband, in one of the defendants' bras. The next day, a Saturday, the Chief of Police, Louis A. Kapica, interviewed Gubitosi about the incident. Gubitosi was not able to secure an attorney for a Saturday interview on such short notice, but a Union representative was present. During the interview, Gubitosi again maintained that she had strip searched the three suspects.

As a result of Kapica's investigation, Gubitosi was suspended by the Town Board pending disciplinary charges relating to this incident. Subsequently, on August 17, 1994, six charges were brought against Gubitosi, for among other things, disobedience of an order, failure to perform a duty, and knowingly making a false report. The proceedings were brought under the Westchester County Police Act. Westchester County, N.Y. Police

Act, Ch. 104, §§ 7 and 8 (1936) (amended Ch. 812 (1941), Laws of New York). Proceedings under the act are subject to judicial review under Article 78 of the New York Civil Practice Law and Rules. Westchester County, N.Y. Police Act, Ch. 104, § 8 (1936) (amended Ch. 812 (1941). Laws of New York). As of this date, the disciplinary hearings have commenced but have not been completed.

Gubitosi's complaint sets forth fifteen claims, premised, for the most part, on defendants' retaliation against plaintiff for her criticisms of the police department. Plaintiff also makes several claims of violations of Equal Protection and Due Process.[3] Defendant, urging that all of Gubitosi's federal claims can be fully and adequately considered in pending state disciplinary proceedings have moved this Court to abstain from considering her federal claims.

### III. DISCUSSION

#### A. Legal Standard

■ Given the procedural posture of this motion, the Court is constrained to accept as true Gubitosi's factual allegations and draw from them all reasonable favorable inferences. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992).

#### B. Abstention

■ Defendants argue that *Younger* requires abstention. See *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Its abstention doctrine is based on a policy against federal court interference with pending state judicial proceedings. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 433–34, 102 S.Ct. 2515, 2521–22, 73 L.Ed.2d 116 (1982).

■ In *Younger*, the Supreme Court held that a federal district court could not

---

2. Plaintiff did not make any formal objection to the strip search practices but rather expressed her concerns to Sgt. Teahan during her performance review.

3. On January 25, 1995, Gubitosi moved by Order to Show Cause for a preliminary injunction re-

quiring plaintiff's reinstatement, enjoining the disciplinary proceedings and prohibiting any further retaliation. She also moved for a temporary restraining order pending the determination of the motion. On February 21, 1995, this Court denied Gubitosi's motion.

enjoin an ongoing state criminal proceeding while it entertained constitutional challenges to the criminal statute under which the defendant was being prosecuted when such arguments could be heard and decided in the state proceeding. Subsequently, *Younger* has been extended to civil proceedings and to state administrative proceedings, as long as the state court can examine the relevant constitutional claims. See *Ohio Civil Rights Comm'n v. Dayton Christian Schools Inc.*, 477 U.S. 619, 627–29, 106 S.Ct. 2718, 2722–23, 91 L.Ed.2d 512 (1986) and *Middlesex,* supra, 457 U.S. at 432–35, 102 S.Ct. at 2521–22. Where, as here, the relief requested also includes monetary damages that are unavailable in the state proceeding, a stay rather than an outright dismissal of the federal damage claims is appropriate. See *Deakins v. Monaghan*, 484 U.S. 193, 202, 108 S.Ct. 523, 529, 98 L.Ed.2d 529 (1988); *Thomas v. New York City*, 814 F.Supp. 1139 (E.D.N.Y. 1993).

■ *Christ the King Regional High School v. Culvert*, 815 F.2d 219 (2d Cir.1987), *cert. denied*, 484 U.S. 830, 108 S.Ct. 102, 98 L.Ed.2d 63 (1987) announced a three prong test for determining the applicability of the *Younger* doctrine: (1) there must be an ongoing state proceeding; (2) an important state interest must be implicated; and (3) the plaintiff must have an avenue open for review of constitutional claims in state court *Id.* at 224 (applying *Dayton*, supra, 477 U.S. at 629, 106 S.Ct. at 2723).

■ Even if the necessary predicates for abstention are met, however, it is not warranted if the state proceedings are being undertaken in bad faith or for purposes of harassment or if extraordinary circumstances exist. *Cullen v. Fliegner*, 18 F.3d 96, 103–04 (2d Cir.1994), *cert. denied.* —— U.S. ——, 115 S.Ct. 480, 130 L.Ed.2d 393 (1994); *Lewellen v. Raff*, 843 F.2d 1103, 1109–10 (8th Cir.1988), *cert. denied*, 489 U.S. 1033, 109 S.Ct. 1171, 103 L.Ed.2d 229 (abstention improper for bad faith prosecution brought in retaliation for exercise of First Amendment rights).

In *Cullen*, supra, 18 F.3d 96, the Second Circuit affirmed the district court's decision not to dismiss. In that case, involving a long history of conflict between a school board and a teacher, the plaintiff alleged that his state court prosecution was in retaliation for his exercise of first amendment rights. Prior to the federal proceedings, a disciplinary panel had declined to adopt the recommendation by members of a school board to terminate the plaintiff who was a tenured—albeit unruly—high school teacher. The board then appealed to the New York State Commissioner of Education. During the pendency of the appeal, the school district held school board elections and a budget vote. The teacher contested the fairness of the election and actually campaigned against the then acting school board, and among other things, he picketed within 100 feet of the polling place, conduct that arguably violated the New York State Education Law. In connection with elections at that particular location, however, that provision had not been enforced and neither notice nor 100 feet markers were posted near the polling location. The teacher, although advised by the school board and members of the police department that his activities were illegal, continued to electioneer. Ten months later, the board brought administrative charges against the teacher, this time for a violation of the Education Law. The teacher attempted to dismiss the charges on first amendment grounds, but the panel denied his motion. He then instituted an action in federal court, seeking to enjoin the disciplinary proceeding. The court found that the school board's prosecution of the charges and the commencement of the disciplinary proceedings violated the first amendment and enjoined the school board from continuing with the proceeding.

On appeal, defendants argued that, under *Younger*, the district court should have abstained. The Court of Appeals affirmed, noting that while the record was not entirely conclusive, it nonetheless indicated a history of conflict between the school board and the teacher and a corresponding desire on the part of the school board "to do something about" him. The charges, along with the proceeding that followed, the court found, imposed a chilling effect on plaintiff's first amendment rights. The court concluded that plaintiff's allegations of retaliation were sufficient to establish them as an exception to *Younger*.

■ We believe that Gubitosi's claims of retaliatory discipline are sufficient for the principals of *Cullen* to control. According to Gubitosi's complaint, just prior to her suspension, she voiced her objections to the Police Department concerning a number of issues of arguably public concern, including wasteful spending, misconduct, and illegal strip search and safety procedures. Although Gubitosi has not yet proven her retaliation claim, her allegations are sufficient to survive a Fed.R.Civ.P. 12(b)(6) motion. See *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (holding dismissals under Fed.R.Civ.P. 12(b)(6) warranted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief"); see also *Chiropractic Alliance of New Jersey v. Parisi*, 854 F.Supp. 299, 307 (D.N.J.1994). As the court cannot conclusively determine at this stage of litigation whether or not subsequent discovery in this case will bear out allegations of bad faith, it would be untimely to abstain under *Younger* in light of the nature of plaintiff's claims.[4]

## III. CONCLUSION

For the foregoing reasons, defendants' motion is denied.

**SO ORDERED.**

---

**4.** Defendants' reliance on the decision in *Feerick v. Sudolnik*, 816 F.Supp. 879 (S.D.N.Y.1993), *aff'd* 2 F.3d 403 (2d Cir.1993), is misplaced. In that case, the court abstained from enjoining a criminal prosecution of police officers arising out of their search of a housing project. Plaintiffs brought a civil rights action against the judge and various law enforcement agencies involved in the criminal proceeding which alleged that the indictment filed against them was improperly derived from immunized testimony and therefore violated plaintiffs' constitutional privileges against self incrimination. In addition to finding that plaintiffs' rights would be adequately addressed in the state court proceeding, the district court specifically found that plaintiffs failed to allege that the prosecution was retaliatory. *Feerick*, 816 F.Supp. at 885. By contrast, Gubitosi has specifically stated in her complaint that defendants' actions were in retaliation for her first amendment rights.

---

The Second Circuit's decision in *Mason v. Departmental Disciplinary Committee*, 894 F.2d 512 (2nd Cir.1990), *cert. denied*, 497 U.S. 1025, 110 S.Ct. 3274, 111 L.Ed.2d 784 (1990) is also inapposite. There, plaintiff, an attorney, sought to enjoin the state bar from investigating him on charges of attorney misconduct on the grounds that the investigating committee was biased and jurisdictionally incompetent to adjudicate his case. The Court of Appeals held that the lower court properly abstained, finding that plaintiff's allegations of an improper hearing did not rise to the level of retaliation required in finding an exception to *Younger* abstention. In this case, however, Gubitosi's claim does not focus on the quality of her disciplinary proceeding. Rather, the basic thrust of Gubitosi's complaint is that the entire proceedings were initiated to retaliate against constitutionally protected conduct.